## REICHHOLD CHEMICALS, INC. *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY ET AL.
### (SC 15698)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued October 28—officially released December 23, 1997

*Francis J. Brady*, with whom were *Barry J. Fleishman*, pro hac vice, and, on the brief, *Elizabeth J. Stewart* and *Leon B. Kellner*, pro hac vice, for the appellant (plaintiff).

*Stephen A. Fennell*, pro hac vice, with whom were *John B. Farley* and, on the brief, *Steven J. Barber*, pro hac vice, *John W. Lemega, John L. Altieri, Jr., Ralph P. DeSanto*, pro hac vice, *Michael T. Ryan, Kathleen F. Munroe, R. Cornelius Danaher, Frederick B. Tedford, Sheldon Karasik*, pro hac vice, and *John T. Harris*, for the appellees (defendant Home Insurance Company et al.).

*Opinion*

CALLAHAN, C. J. The principal issue in this appeal is whether the trial court properly applied New York law to the facts of this insurance coverage dispute. We conclude that it did not.

The record reveals the following uncontroverted facts and procedural history. On October 6, 1988, the plaintiff, Reichhold Chemicals, Inc., brought an action against sixteen insurance companies from which it had purchased primary[1] and excess comprehensive general liability insurance coverage, alleging that those policies obligated the insurers to defend and indemnify the

---

[1] The plaintiff's primary coverage insurers, the named defendant, Hartford Accident and Indemnity Company, and the defendant Aetna Casualty and Surety Company, were insurance companies organized under the laws of Connecticut with their principal places of business in Connecticut.

plaintiff with respect to claims arising from chemical contamination at twenty-three sites across the United States.

As a result of settlements, successful motions for summary judgment and liquidation proceedings, there are only six remaining defendants,[2] each of which is an excess liability carrier.[3] The sites for which the plaintiff is seeking coverage are located in California, Delaware, Florida, Georgia, Louisiana, Massachusetts, Michigan, Mississippi, New Jersey and Washington.

At the time the relevant liability insurance policies were issued, the plaintiff's headquarters were located in New York. The plaintiff negotiated the policies, paid the policy premiums and, in some instances, received payments on claims filed pursuant to the policies through its New York office. The plaintiff's insurance broker was located in New York. The defendants negotiated, executed and administered the policies through their New York offices.[4]

The trial court divided the action into separate jury trials on the basis of site location. The first trial, which is the subject of this appeal, involved coverage for claims arising from chemical contamination of groundwater at a site in Tacoma, Washington (site).

[2] The six remaining defendants are American Home Assurance Company, Century Indemnity Company, Commercial Union Insurance Company, Granite State Insurance Company, The Home Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania. Hereafter, we refer to the six remaining defendants as the defendants.

[3] The policies at issue provide "layers" of coverage. Some policies provide coverage that attaches immediately after the coverage limits of the plaintiff's primary policies have been reached, and others provide coverage that attaches only after the coverage limits of the primary policies and the coverage limits of other excess policies have been reached.

[4] Three of the six defendants have their principal places of business in New York.

Although the site is located in Washington, the court applied New York law.[5] Under New York law, timely compliance with a notice of occurrence provision[6] contained in a liability policy is a condition precedent to attachment of the insurer's duty to defend and indemnify. See *Olin Corp. v. Ins. Co. of North America*, 966 F.2d 718, 723 (2d Cir. 1992) (applying New York law). Hence, an insurer "need not show prejudice before it can assert the defense of noncompliance." *Security Mutual Ins. Co. of New York v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 293 N.E.2d 76, 340 N.Y.S.2d 902 (1972) (primary coverage carrier); *American Home Assurance Co. v. International Ins. Co.*, 90 N.Y.2d 433, 442–43, 684 N.E.2d 14, 661 N.Y.S.2d 584 (1997) (excess coverage carrier). By contrast, although a lack of timely notice defense also is recognized under Washington law, insurers must plead and prove prejudice in order to assert the defense. *Public Utility District Number One v. International Ins. Co.*, 124 Wash. 2d 789, 803–804, 881 P.2d 1020 (1994).

The trial was bifurcated into two stages. The first stage of the proceedings was limited to the issue of whether the plaintiff had complied with the notice of occurrence provisions contained in the policies. At the close of the evidence on the issue of notice, the trial court instructed the jury that the issue was to be decided in accordance with New York law. The jury found that the plaintiff had not complied with those provisions and returned a verdict for the defendants American

---

[5] None of the relevant liability insurance policies contained a choice of law clause.

[6] The policies require the plaintiff to provide the defendants with timely notice of any occurrence that is likely to involve a claim. The polices also contain "pollution exclusion" clauses that typically limit coverage to "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury [or] property damage . . . ."

Home Assurance Company, Century Indemnity Company, Commercial Union Insurance Company, The Home Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and against the defendant Granite State Insurance Company.[7]

The plaintiff moved to set aside the verdict, for judgment notwithstanding the verdict and for a new trial. The trial court denied all three motions and rendered judgment for the defendant American Home Assurance Company et al. in accordance with the verdict. Pursuant to Practice Book § 4002C, the plaintiff appealed from that judgment to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4024 and General Statutes § 51-199 (c).

On appeal, the plaintiff maintains that the trial court improperly: (1) applied New York law rather than Washington law; (2) bifurcated the trial; and (3) limited the scope of the plaintiff's evidence during the notice phase and allowed the defendants to introduce impermissibly prejudicial evidence of contamination during that phase of the trial. We reverse the judgment of the trial court and remand for a new trial.

I

The plaintiff first urges this court to examine the propriety of continued adherence to the lex loci contractus doctrine set forth in the Restatement of Conflict of Laws (Restatement [First]). Restatement, Conflict of Laws § 332 et seq. (1934). The plaintiff maintains that we should abandon use of that doctrine and adopt in

[7] The plaintiff and Granite State Insurance Company (Granite State) subsequently entered into a stipulation in which it was agreed that the action would be dismissed as to Granite State and that the continued viability of the plaintiff's claims against Granite State would depend on the outcome of this appeal. Thereafter, the court rendered a supplemental judgment in accordance with the stipulation.

its stead the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws (Restatement [Second]). 1 Restatement (Second), Conflict of Laws § 187 et seq. (1971 and Sup. 1988). According to the plaintiff, Washington, not New York, is the jurisdiction that has, with respect to the notice issue, the "most significant relationship" with the contract claims underlying this issue. The plaintiff maintains, therefore, that Washington notice law should have been applied. We agree.

A brief overview of the various choice of law approaches is necessary to our resolution of the plaintiff's choice of law claim. Courts generally have adopted one of three approaches to resolving choice of law issues in insurance coverage cases: (1) the "lex loci contractus" rule; (2) the "center of gravity"[8] approach; 1 Restatement (Second), supra, § 188 (1971);[9] or (3) the "location of the risk" approach. Id., § 193.[10]

---

[8] New York courts have used the term "center of gravity" to refer to the analytical approach set forth in § 188 (3). See, e.g., *Zurich Ins. Co.* v. *Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317, 642 N.E.2d 1065, 618 N.Y.S.2d 609 (1994).

[9] Section 188 of the Restatement (Second) provides: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."

[10] Section 193 of the Restatement (Second) provides that "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties

## A

The traditional test for resolving choice of law issues in contract cases is the lex loci contractus rule set forth in the Restatement (First). Restatement, supra, § 332 et seq. (1934). Under that approach, which has been used by Connecticut courts, a contract is construed according to the law of the place where the contract was made. See *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 366, 641 A.2d 783 (1994); *Breen* v. *Aetna Casualty & Surety Co.*, 153 Conn. 633, 637, 220 A.2d 254 (1966).

## B

A second approach to resolving choice of law issues in contract cases is the "most significant relationship" test of the Restatement (Second). Sections 187 and 188 of the Restatement (Second) set forth relevant general principles applicable to all contracts, and §§ 189 through 197 address the application of those principles to specific types of contracts.[11]

Section 187 pertains to cases in which a contract contains a choice of law clause; 1 Restatement (Second), supra, § 187, p. 134 (Sup. 1988);[12] and § 188 pertains to cases in which a contract does not contain

understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

[11] Section 193 of the Restatement (Second), in particular, pertains to liability insurance contracts. See footnote 10 of this opinion.

[12] Section 187 of the Restatement (Second) provides: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable

such a clause. 1 Restatement (Second), supra, § 188 (1) (1971). Section 188, which applies to cases that traditionally would have been decided under the lex loci contractus rule, provides that in the absence of an effective choice by the parties, "(1) [t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6."

Section 6 (2) of the Restatement (Second), which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the "most significant relationship": "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Section 188 (2) lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the

---

basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

"(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law."

parties." Comment (e) to § 188 (2) states that "the forum, in applying the principles of § 6 to determine the state of most significant relationship, should give consideration to the relevant policies of all potentially interested states and the relative interests of those states in the decision of the particular issue. The states which are most likely to be interested are those which have one or more of the [enumerated] contacts with the transaction or the parties." Id., § 188 (2), comment (e), p. 579.

The appropriate starting point under § 188, therefore, is identification of the policy underlying the relevant law of each state having one or more of the listed contacts. If application of a particular state's law would further its underlying policy, that state is said to have an "interest." See id., § 6 (2) (c). If two or more states have conflicting "interests," the court must determine which gives rise to the "most significant relationship." Id., § 188 (1).

The Restatement (Second) sets forth several rebuttable presumptions regarding which state is the jurisdiction that enjoys the "most significant relationship." Id., §§ 188 through 197, pp. 575–632. Those presumptions are based on the assumption that, with respect to a particular type of contract, a state having certain of the enumerated contacts ordinarily will be the state that has the "most significant relationship." See id., Title B, Introductory Note, p. 586 ("it is considered possible to state . . . that . . . a particular contact plays an especially important role in the determination of the state of the applicable law").

Section 188 (3) sets forth a general presumption for all contracts: "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied . . . ."

New York courts have interpreted § 188 (3) as establishing a "center of gravity" presumption in favor of applying the law of the state where the majority of the contracting transactions occurred. See *Zurich Ins. Co.* v. *Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317, 642 N.E.2d 1065, 618 N.Y.S.2d 609 (1994); see also *Auten* v. *Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99 (1954). Under the center of gravity approach, the law of a different state is applied only if that state's policy-based interest in having its own law applied is strong enough to override the presumption in favor of application of the law of the state at the "center of gravity." See 1 Restatement (Second), supra, § 188 (1).

C

The Restatement (Second) analysis does not end with § 188. Section 193 of the Restatement (Second) sets forth a third possible approach for resolving choice of law questions in insurance coverage cases. Section 193 provides that "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." Thus, § 193 establishes a special presumption in favor of application, in liability insurance coverage cases, of the law of the jurisdiction that is the principal location of the insured risk.

Most courts applying the § 193 presumption in environmental liability coverage cases have deemed the location of the waste site to be the location of the insured risk. See, e.g., *A. Johnson & Co.* v. *Aetna Casualty & Surety Co.*, 741 F. Sup. 298, 300–302 (D. Mass.

1990), aff'd, 933 F.2d 66 (1st Cir. 1991); *Leksi, Inc.* v. *Federal Ins. Co.*, 736 F. Sup. 1331, 1336 (D.N.J. 1990). In a case involving nationwide claims against a boiler manufacturer for exposure to asbestos, however, an Ohio federal court reasoned that the risk insured against was the risk that claims against the policyholder would deplete the insured's assets and that, accordingly, the principal location of the insured risk was the primary location of those assets. *Babcock & Wilcox Co.* v. *Arkwright-Boston Mfg. Mutual Ins. Co.*, 867 F. Sup. 573, 579–80 (N.D. Ohio 1992), aff'd, 53 F.3d 762 (6th Cir. 1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 973, 133 L. Ed. 2d 893 (1996). Comment (a) to § 193 indicates, however, that in environmental liability coverage cases, the location of the waste site is the location of the insured risk. 1 Restatement (Second), supra, § 193, comments (a) and (b), pp. 610–11.

D

The modern trend has been to move away from the lex loci approach of the Restatement (First) to the more flexible approach of the Restatement (Second). This court previously has endorsed the use, in other contexts, of the Restatement (Second) approach to resolving choice of law questions. For example, although we traditionally had adhered to the lex loci delicti doctrine, which provides that the substantive rights and obligations arising out of a tort claim should be determined by the law of the place of injury; see, e.g., *Gibson* v. *Fullin,* 172 Conn. 407, 411, 374 A.2d 1061 (1977); *Menczer* v. *Menczer,* 160 Conn. 563, 564–65, 280 A.2d 875 (1971); *Landers* v. *Landers,* 153 Conn. 303, 304–305, 216 A.2d 183 (1966); *Orr* v. *Ahern,* 107 Conn. 174, 176, 139 A. 691 (1928); we expressly abandoned "categorical allegiance" to that doctrine in *O'Connor* v. *O'Connor,* 201 Conn. 632, 648, 519 A.2d 13 (1986), in favor of the Restatement (Second) approach. Id., 650.

Furthermore, our approval of the use of the Restatement (Second) approach has not been limited to cases involving tort claims. For example, in *Elgar* v. *Elgar*, 238 Conn. 839, 846–52, 679 A.2d 937 (1996), we followed § 187 of the Restatement (Second) in resolving a choice of law question presented in an antenuptial contract dispute. See also *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 188–91, 588 A.2d 194 (1991) (following Restatement [Second] approach in workers' compensation case).

Moreover, many jurisdictions have abandoned completely the use of lex loci contractus to resolve choice of law questions in contract cases; see, e.g., *State Farm Mutual Automobile Ins. Co.* v. *Estate of Simmons*, 84 N.J. 28, 37, 417 A.2d 488 (1980); and Maryland and Michigan, states that, like Connecticut, traditionally followed the rule, recently partially abandoned its use. See, e.g., *Commercial Union Ins. Co.* v. *Porter Hayden Co.*, 116 Md. App. 605, 681–82, 698 A.2d 1167 (1997); *Chrysler Corp.* v. *Skyline Industrial Services, Inc.*, 448 Mich. 113, 125, 528 N.W.2d 698 (1995).

In *O'Connor* v. *O'Connor*, supra, 201 Conn. 642, we noted that " '[t]he basic theme running through the attacks on the [lex loci] rule is that wooden application of a few overly simple rules, based on the outmoded "vested rights theory," cannot solve the complex problems which arise in modern litigation and may often yield harsh, unnecessary and unjust results.' . . . The lex loci approach fails to acknowledge that jurisdictions other than the place of injury may have a legitimate interest in applying their laws . . . ." (Citation omitted.) That rationale is equally applicable to choice of law questions in contract cases. We conclude, therefore, that the Restatement (Second) approach to resolving such questions should be followed in contract cases.

Accordingly, we adopt the § 188 general presumption, which provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied. We also adopt the § 193 special presumption for liability insurance contracts, which provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the insured risk is located should be applied.

## E

The plaintiff maintains that the Restatement (Second) approach dictates that, with respect to the notice issue, Washington law, rather than New York law, should have been applied at trial. We begin our choice of law analysis with respect to this particular factual situation by considering, in accordance with § 6 (2) (c), whether both New York and Washington have an "interest" in the application of their own notice law to the insurance policies at issue in this case. In order to make that determination, we: (1) identify the policies that underlie each state's notice law; and (2) examine whether those policies would be advanced by the application of the state's notice law in the present case. See 1 Restatement (Second), supra, § 6 (2) (c).

For the following two reasons, we conclude that New York has an "interest" in having New York notice law applied. First, New York has asserted a policy-based interest in limiting the availability of liability coverage. See *Unigard Security Ins. Co.* v. *North River Ins. Co.*, 79 N.Y.2d 576, 581, 594 N.E.2d 571, 584 N.Y.S.2d 290 (1992) (insurer must have opportunity to protect itself); *Security Mutual Ins. Co. of New York* v. *Acker-Fitzsimons Corp.*, supra, 31 N.Y.2d 440 (no prejudice required rule); see also *Technicon Electronics Corp.* v. *American Home Assurance Co.*, 141 App. Div. 2d 124, 143, 533

N.Y.S.2d 91 (1988), aff'd, 74 N.Y.2d 66, 542 N.E.2d 1048, 544 N.Y.S.2d 531 (1989) (asserting interest in limiting coverage with respect to pollution exclusion clauses). New York courts have found the place of contracting to be more significant than the location of the risk, especially when combined with coinciding contract-related factors such as negotiation of the policies and the location of the insured. See, e.g., *Borg-Warner Corp.* v. *Ins. Co. of North America*, 174 App. Div. 2d 24, 29, 577 N.Y.S.2d 953 (1992), leave to appeal denied, 80 N.Y.2d 753, 600 N.E.2d 632, 587 N.Y.S.2d 905 (1992) (applying New York law in environmental liability coverage case in which contaminated sites were located in several states because formation and performance contacts were centered in New York); *Olin Corp.* v. *Ins. Co. of North America*, 743 F. Sup. 1044 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991) (applying New York law in environmental liability coverage dispute in which contaminated site was located in Virginia because formation and performance contacts were centered in New York). Second, because three of the six defendants have their principal places of business in New York and because all six negotiated, executed and administered the policies through their New York offices, application of New York law would further the protective policy underlying New York's notice law.

For the following two reasons, we also conclude that Washington has an "interest" in having Washington notice law applied. First, Washington's actual prejudice requirement is intended to protect the justified expectations of the parties. See *Public Utility District Number One* v. *International Ins. Co.*, supra, 124 Wash. 2d 803 ("[t]o release an insurer from its obligations without a showing of actual prejudice would be to authorize a possible windfall for the insurers"); see also *Pederson's Fryer Farms, Inc.* v. *Transamerica Ins. Co.*, 83 Wash. App. 432, 438–39, 922 P.2d 126 (1996); *Canron, Inc.* v.

*Federal Ins. Co.*, 82 Wash. App. 480, 485, 918 P.2d 937 (1996); *Pulse* v. *Northwest Farm Bureau Ins. Co.*, 18 Wash. App. 59, 61, 566 P.2d 577 (1977). Washington courts also have recognized that the state in which the hazardous waste site is located has a compelling interest in the application of its own law. "Washington has a paramount interest in the health and safety of its people. Washington bears the responsibility under [the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)][13] for ensuring the site cleanup and will bear the burden if the site is not cleaned. The existence or absence of insurance proceeds can determine whether or not a hazardous waste site is remediated. Washington, therefore, has a significant interest in [the plaintiff's] insurance coverage." *Canron, Inc.* v. *Federal Ins. Co.*, supra, 494. Second, because the site at issue in this appeal is located in Washington, application of Washington law will advance both the policy underlying that state's notice defense law and its public policy of protecting the environment and the health and safety of its citizens.

F

New York and Washington have conflicting "interests," and, therefore, we must determine which of those interests gives rise to the "most significant relationship." Because the liability insurance policies provide coverage for risks located in more than one state, the parties have attached great significance to the question of which provision of the Restatement (Second), § 193 or § 188, should guide our analysis of this question.

For the following three reasons, we conclude that the § 193 special presumption, rather than the § 188 general presumption, should apply in cases involving liability insurance policies that cover immovable risks located in more than one state. First, § 188 (3) indicates

---

[13] See 42 U.S.C. §§ 9601 through 9675.

that § 193, rather than § 188, is the appropriate section. See 1 Restatement (Second), supra, § 188 (3) (if place of negotiation is place of performance, local law of that state will usually be applied *"except as otherwise provided in §§ 189–199"* [emphasis added]). Second, both § 193 and comment (a) to that section deal directly with application of the notice law of the state in which the insured risk is located. Id., § 193, comment (a), p. 610 (§ 193 rule applies to questions such as "whether the company is released from liability by reason of the insured's failure to give it prompt notice"). Third, comment (f) to § 193 explicitly discusses liability insurance policies that provide coverage for risks located in more than one state. See id., § 193, comment (f), pp. 613–14 (indicating that courts should treat each risk insured under such policies as separate policy). Accordingly, the § 193 presumption that Washington enjoys the "most significant relationship" is applicable to the notice issue in the present case.

The importance that the parties have attached to the determination of whether § 188 or § 193 should guide our analysis, however, is overstated. Those sections merely provide a starting point; they do not control the result. Having determined that Washington is the state presumed to have the "most significant relationship" to the notice issue, we must determine, guided by the principles set forth in § 6 (2), whether New York's interest in the application of its notice law is sufficiently compelling to override that presumption.

Our analysis of the relative significance of the interests of New York and Washington begins with an examination of the policies embodied in our own state law. See id., § 6 (2) (b). Connecticut, like Washington, affords protection to liability insurance policyholders from forfeiture of coverage due to failure to comply with contractual notice provisions. "The purpose of a

policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. . . . And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation. . . . If this legitimate purpose can be protected by something short of automatic enforcement of the notice provisions, then their strict enforcement is unwarranted." (Citation omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 417, 538 A.2d 219 (1988). "[A] proper balance between the interests of the insurer and the insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's delay in giving notice of an event triggering insurance coverage. If it can be shown that the insurer suffered no material prejudice from the delay, the nonoccurrence of the condition of timely notice may be excused because it is not . . . a material part of the agreed exchange." (Internal quotation marks omitted.) Id., 417–18. Hence, in liability insurance coverage cases, Connecticut has an interest, as the forum state, in applying its own notice law, rather than that of New York.

Connecticut law is not, however, identical to Washington law. "[A]lthough we are persuaded that the existence or nonexistence of prejudice from delayed notice should be determined on a factual basis, the burden of establishing lack of prejudice must be borne by the insured. It is the insured who is seeking to be excused from the consequences of a contract provision with which he has concededly failed to comply. . . . The determination of what is fair, as a factual matter, must however depend upon a proper showing by the complainant who seeks this extraordinary relief." Id., 419–20.

Connecticut notice law, in effect, splits the difference between Washington law and New York law. Like Washington; see *Public Utility District Number One* v. *International Ins. Co.*, supra, 124 Wash. 2d 789; Connecticut requires a showing of prejudice before it will allow an insurer to avoid liability. Unlike Washington, however, Connecticut places the burden of proof on the policyholder rather than on the insurer. Although Connecticut law therefore provides policyholders with less protection than does Washington law, it does provide protection. Because New York law affords no protection from possible unjust forfeiture; see *American Home Assurance Co.* v. *International Ins. Co.*, supra, 90 N.Y.2d 433; we conclude that Connecticut notice law is more consistent with Washington law than it is with New York law. Accordingly, Connecticut, as the forum state, has an interest in applying Washington notice law rather than New York notice law, and like § 193, that interest suggests that in the present case, Washington, the site of the risk, is the state with the "most significant relationship" to the notice issue.

Furthermore, respect for the relevant policies of our own state is not the only principle under § 6 (2) that supports application of Washington's notice law. For the reasons that follow, we conclude that certainty, predictability and uniformity of results within our jurisdiction; see 1 Restatement (Second), supra, § 6 (2) (f); will be advanced by the application of Washington notice law and impeded by the application of New York notice law.[14]

---

[14] We do not find persuasive the argument that application of the notice law of more than one state to a particular contract will produce impermissibly inconsistent results. Nationwide uniformity of insurance contract interpretation is an illusory goal, not truly achievable or necessarily preferable; see *Gilbert Spruance Co.* v. *Pennsylvania Manufacturers' Assn. Ins. Co.*, 134 N.J. 96, 101, 629 A.2d 885 (1993); and does not have " 'sufficient value to overcome the significant governmental interest of the various jurisdictions where the insured risks are located, or where the insured entity predictably will incur legal liabilities.' " Id., 108.

Like Washington, Connecticut has a significant public policy interest in ensuring that funds are available for the cleanup of hazardous waste sites. CERCLA authorizes the federal Environmental Protection Agency (EPA) to utilize "superfund" money to clean up hazardous waste sites and then sue responsible parties in order to replenish the "superfund." See 42 U.S.C. §§ 9601 through 9675. In order for the EPA to undertake a long-term cleanup action, however, the state in which the hazardous waste site is located must first agree to pay or assure payment of at least 10 percent of the remediation cost. See 42 U.S.C § 9604 (c) (3) (C) (i); see also R. McKinstry, "The Role of State 'Little Superfunds' in Allocation and Indemnity Actions Under the Comprehensive Environmental Response, Compensation and Liability Act," 5 Vill. Envtl. L.J. 83, 85–90 (1994). The Connecticut legislature has enacted a "little superfund law"; see General Statutes §§ 22a-133a to 22a-133j; that provides, inter alia, that when "the threat to the environment and public health . . . is unacceptable" and "the responsible party is not in timely compliance with orders . . . to provide remedial action," the cost of remedial action may be paid with state funds. General Statutes § 22a-133f (a) (2).

There currently are fourteen Connecticut sites on the EPA Superfund National Priority List and eleven Connecticut sites on the state Superfund Priority List.[15] Those sites represent a significant threat to the environment, to the health and safety of Connecticut citizens and to our state's financial resources. Accordingly, Connecticut has a compelling interest in not applying New York notice law in environmental liability coverage cases involving Connecticut sites. See *Gilbert Spruance Co.* v. *Pennsylvania Manufacturers' Assn. Ins. Co.*,

[15] United States Department of Environmental Protection, Federal Superfund List (1997); Connecticut Department of Environmental Protection, State of Connecticut Superfund Priority List (1997).

134 N.J. 96, 629 A.2d 885 (1993) (New Jersey's urgent concern for health and safety of its citizens and its interest in securing financial resources to remediate New Jersey's toxic-waste sites and to compensate victims of New Jersey pollution gave rise to dominant relationship). Because Connecticut's compelling interest in not applying New York notice law in cases involving Connecticut sites is consistent with its interest, as the forum state, in the application of Washington notice law in the present case, application of Washington law in this case will advance certainty, predictability and uniformity of results within our jurisdiction.

Moreover, application of Washington law is consistent with the protection of the justified expectations of the parties; see 1 Restatement (Second), supra, § 6 (d) and (e); which is a basic principle underlying the field of contracts. Id., § 188 (1), comment (b), p. 576. The policies at issue in this case do not contain choice of law clauses; accordingly, it is not possible to give effect to the parties' subjective expectations with respect to choice of law. It is possible, however, to give effect to their *justified* expectations regarding performance of substantive contract obligations. While an insurer's expectation regarding protection from liability in cases in which an insured's failure to provide timely notice has prejudiced the insurer is justified, such expectation of protection from liability in cases in which the lack of notice has not prejudiced the insurer is not justified. Requiring a showing of prejudice protects the justified expectations of the parties and at the same time prevents one party from reaping an unjust windfall. *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 206 Conn. 417–18; *Public Utility District Number One* v. *International Ins. Co.*, supra, 124 Wash. 2d 803.

Finally, in this case the administrative difficulties; see 1 Restatement (Second), supra, § 6 (2) (g); that the trial court might encounter in applying the law of the

several jurisdictions where the sites are located do not provide an adequate basis for the application of New York notice law instead of Washington notice law. The case has already been divided into site-specific trials, and, hence, on remand the trial court will need to consider only the law of Washington.

Moreover, even if the case had not been so divided, application of the notice law of the site jurisdictions likely would not have been unduly burdensome. This is not an area of the law in which a trial court might find itself grappling with numerous conflicting and subtly differing bodies of law. Seven of the ten states in which the sites at issue in this case are located require insurers to prove prejudice in order to take advantage of a lack of timely notice defense. See *Clemmer* v. *Hartford Ins. Co.*, 22 Cal. 3d 865, 885–86, 587 P.2d 1098, 151 Cal. Rptr. 285 (1978); *State Farm Mutual Automobile Ins. Co.* v. *Johnson*, 320 A.2d 345, 347 (Del. 1974); *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 282, 409 N.E.2d 185 (1980); *Wendel* v. *Swanberg*, 384 Mich. 468, 478, 185 N.W.2d 348 (1971); *Rampy* v. *State Farm Mutual Automobile Ins. Co.*, 278 So. 2d 428, 433–34 (Miss. 1973); *Cooper* v. *Government Employees Ins. Co.*, 51 N.J. 86, 94, 237 A.2d 870 (1968); *Public Utility District Number One* v. *International Ins. Co.*, supra, 124 Wash. 2d 803. One state, Florida, requires insureds to prove lack of prejudice. See *Bankers Ins. Co.* v. *Macias*, 475 So. 2d 1216, 1217–18 (Fla. 1985). The two remaining states follow the New York rule that no showing of prejudice is required. See *Jackson* v. *Transportation Leasing Co.*, 893 F.2d 794, 795–96 (5th Cir. 1990) (applying Louisiana law); *Caldwell* v. *State Farm Fire & Casualty Ins. Co.*, 192 Ga. App. 419, 421, 385 S.E.2d 97 (1989).

Furthermore, if a trial court were to find application of the notice laws of more than one jurisdiction unduly burdensome, the court could divide the case into separate site-specific or rule of law-specific trials. A choice

of law determination should not turn solely on the relative ease of application of the law of one particular jurisdiction.

We conclude that New York's "interest" in the application of New York notice law is not sufficiently compelling to overcome the § 193 presumption in favor of application of Washington law. Because Washington is the state with the "most significant relationship" to the notice issue, Washington notice law, rather than New York notice law, should have been applied.

## II

The plaintiff next maintains that the trial court improperly bifurcated the trial into separate notice and coverage phases.[16] We disagree.

A trial court may order that one or more issues that are joined be tried before the others. General Statutes § 52-205; Practice Book § 283. Bifurcation of trial proceedings lies solely within the discretion of the trial court; see *Day* v. *General Electric Credit Corp.*, 15 Conn. App. 677, 689, 546 A.2d 315, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988); *In re Jose C.*, 11 Conn. App. 507, 508, 527 A.2d 1239 (1987); and appellate review is limited to a determination of whether that discretion has been abused. See *Swenson* v. *Sawoska*, 18 Conn. App. 597, 601, 559 A.2d 1153 (1989), aff'd, 215 Conn. 148, 575 A.2d 206 (1990).

The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency. *Vichare* v. *Ambac, Inc.*, 106 F.3d 457, 466 (2d Cir. 1996). Bifurcation may be appropriate in cases in which litigation of one issue may obviate the need to litigate another issue. See *Morse/Diesel, Inc.* v. *Fidelity & Deposit Co.*

---

[16] Although our conclusion on the choice of law issue requires a new trial, we consider the remaining claims on appeal because they are likely to arise again.

*of Maryland,* 763 F. Sup. 28, 35 (S.D.N.Y.), modified in part on other grounds, 768 F. Sup. 115 (S.D.N.Y. 1991).

In the present case, litigation of the notice issue might have obviated the need to litigate complex coverage issues related to the Tacoma site. Accordingly, we conclude that the trial court did not abuse its discretion by bifurcating the notice and coverage aspects of the trial.

### III

The plaintiff's final claim is that the trial court improperly: (1) limited its presentation of evidence during the notice phase of the trial; and (2) allowed the defendants to introduce, during the same phase, irrelevant and unduly prejudicial evidence. We disagree.

### A

The plaintiff maintains that the trial court improperly refused to allow it to introduce evidence that the groundwater contamination for which it is seeking coverage is a "covered occurrence" under the policies. In particular, the plaintiff claims that exclusion, during the notice phase, of evidence offered for the purpose of demonstrating that the groundwater contamination at the site was both unexpected and unintentional, was unduly prejudicial.

Under New York law, an insured is required to give notice to its excess insurers "when the circumstances known to [the insured] would have suggested a reasonable possibility of a claim that would trigger that excess insurer's coverage." *Olin Corp.* v. *Ins. Co. of North America,* supra, 743 F. Sup. 1054. Two factors, therefore, are relevant to when the plaintiff's duty to notify the defendants attached: (1) when the circumstances known to the plaintiff suggested a reasonable possibility of a groundwater contamination claim; and (2) when the circumstances known to the plaintiff suggested a

reasonable possibility that the claim would reach the layers of excess coverage.

Prior to trial, the court found, as a matter of law, that June 30, 1986, is the latest possible date on which circumstances suggesting a reasonable possibility of a groundwater claim became known to the plaintiff.[17] On that date, the plaintiff entered into a consent order regarding the site with the EPA and the Washington Department of Ecology. The consent order, which acknowledged that the plaintiff had violated state and federal environmental laws and regulations, required the plaintiff to submit to the Department of Ecology a permit application, maintain financial responsibility for liability, submit to the EPA and the Department of Ecology various plans and schedules for groundwater sampling and take further actions necessary to comply with state and federal law.

Accordingly, determining whether the plaintiff complied with the notice provisions contained in the excess policies involved three subsidiary issues: first, on what date the circumstances known to the plaintiff suggested a reasonable possibility that remediation costs associated with groundwater contamination could pierce the various layers of excess insurance; second, whether, in light of that date, the notice given to the defendants on September 28, 1988, was timely; and third, if such notice was not timely, whether the delay was excusable. See *Security Mutual Ins. Co. of New York* v. *Acker-Fitzsimons Corp.*, supra, 31 N.Y.2d 440.

Evidence regarding whether the groundwater contamination was unexpected and unintentional, therefore, was not relevant to the issue of notice.

---

[17] Because the plaintiff did not notify its insurers of a possible occurrence at the site until September 28, 1988, and did not proffer evidence explaining or excusing the delay of more than two years, the trial court rendered partial summary judgment in favor of a primary insurer.

Accordingly, the trial court did not abuse its discretion by excluding such evidence during the notice phase of the trial.

B

The plaintiff also maintains that the trial court improperly allowed the defendants to introduce evidence that characterized the plaintiff as a "polluter." In particular, the plaintiff maintains that testimony regarding chemical storage, drum disposal, contaminated soil and the need for "capping" the soil was irrelevant and unduly prejudicial.[18]

While the testimony at issue may have cast the plaintiff in an unfavorable light, it was neither irrelevant nor unduly prejudicial. The plaintiff's knowledge of the nature and possible extent of soil contamination is relevant to the determination of the date on which the plaintiff reasonably should have suspected that the cost of remediating seepage of soil contaminants into the groundwater could pierce the layers of excess insurance. Accordingly, the trial court did not abuse its discretion by admitting such testimony into evidence during the notice phase of the trial.

The judgment of the trial court is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

---

[18] The plaintiff also maintains that it was unduly prejudiced by the defendants' reference during opening statements to "highly toxic chemical[s]" whose "purpose was basically to kill organism[s]." For the following three reasons we disagree. First, the nature of the chemicals is relevant to the determination of when the plaintiff's duty to notify the defendants of a possible contamination claim attached. Second, the reference was factually accurate. Third, in light of the fact that the trial lasted ten weeks, the prejudicial effect, if any, of that reference was, as the trial court concluded, de minimis.