[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 113)
On October 4, 1995, the plaintiff, JoMarie Bellavita, filed a complaint against the defendant, Allstate Insurance Company. The plaintiff alleges the following facts. On July 12, 1994, the plaintiff, a Connecticut resident, received injuries when she was involved in a motor vehicle accident caused by an unknown vehicle in Massachusetts. The plaintiff has already settled with Liberty Mutual, her insurance company, for the uninsured motorist policy limits in the amount of $25,000. The plaintiff is also an insured resident-relative under her grandmother's, Isabella Allison, auto insurance policy with the defendant. The plaintiff furtheralleges that she is entitled to collect damages from the defendant in excess of the limits of her policy with Liberty Mutual. The plaintiff has yet to be compensated by the defendant for her injuries from the aforementioned collision.
On December 16, 1997, the defendant filed a motion for summary judgment. The plaintiff filed a memorandum of law in opposition on January 20, 1998.
The defendant moves for summary judgment on the ground that CT Page 11263 Connecticut law applies to the plaintiff's uninsured motorist claim and Connecticut prohibits stacking.[1] See General Statutes § 38a-336(d). The plaintiff argues in opposition that Florida law is the appropriate law to apply. Florida law permits stacking as to uninsured motorist claims and, therefore, her claim would be valid.[2]
The threshold issue is what choice of law principles guide this analysis, contract or tort. The relationship between the insured and the insurer clearly is contractual in nature. Harlachv. Metropolitan Property Liability Ins. Co., 221 Conn. 185,190, 602 A.2d 1007 (1992). Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. Hertz Corp. v. Federal Ins. Co.,245 Conn. 374, 381, 713 A.2d 820 (1998). Based on this analysis, contract choice of law principles should be utilized.
The choice of law question is paramount here because Connecticut and Florida have different laws regarding stacking. Connecticut prohibits stacking while Florida permits it as to uninsured motorist coverage only. Thus, this court must determine which state's law applies.
In determining the governing law, a forum applies its own conflict-of-law rules. Gibson v. Fullin, 172 Conn. 407, 411,374 A.2d 1061 (1977). The Connecticut Supreme Court has held that the Restatement (Second) approach to resolving choice of law should be followed in contract cases. See Reichhold Chemicals, Inc. v.Hartford Accident Indemnity Co., 243 Conn. 401, 413,703 A.2d 1132 (1997). Specifically, the court adopted the choice of law presumptions of §§ 188 and 193 of the Restatement (Second), Id., 408-12; see 1 Restatement (Second), Conflict of Laws, Contracts, §§ 188 and 193, pp. 475, 610 (1977).
Section 193 of the Restatement provides that
 [t]he validity of a contract of . . . casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied. CT Page 11264
Section 6(2) of the Restatement (Second) sets forth seven overarching considerations in determining which state has the "most significant relationship": (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Reichhold Chemicals, Inc. v. Hartford Accident Indemnity Co., supra, 243 Conn. 409; see 1 Restatement (Second), supra, § 6(2), p. 10.
 Section 193 of the Restatement establishes a special presumption in favor of application of the law of the jurisdiction that is the principal location of the insured risk. Reichhold Chemicals, Inc. v. Hartford Accident Indemnity Co., supra, 243 Conn. 411. The comments to § 193 provide, in pertinent part, that
 [a]n insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be during at least the major portion of the insurance period . . . [I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question."
See 1 Restatement (Second), supra, § 193, comment (b), p. 611. The "insured risk" is the automobile covered under the policy. The policy does not require the insured vehicle to be involved in the accident, however, for uninsured motorist coverage to be activated. Beckler v. State Farm Mutual Automobile Ins. Co., No. CA-CV 97-0364, 1999 WL 240486, at *5 (Ariz.App. Div. 1 Apr. 22, 1999).
The general rule set forth in § 193 is to be given great weight in determining choice of law issues. The comments state the risk's principal location is the most important contact to be considered in the choice of the applicable law. Thus, the location of the insured risk will be given greater weight than any other single contact. Beckler v. State Farm Mutual AutomobileCT Page 11265Ins. Co., supra, 1999 WL 240486, at *5; see also 1 Restatement (Second), supra, § 193, comment (b), p. 611. Furthermore, the location of the risk is a matter of intense concern to the parties, and the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract.Beckler v. State Farm Mutual Automobile Ins. Co., supra, 1999 WL 240486, at *6; see also 1 Restatement (Second), supra, § 193, comment (c), p. 611.
The grandmother's affidavit avers that she kept her automobile, the subject of the insurance policy, in Florida at all relevant times. (Allison Affidavit, ¶ 10.) Hence, the location of the insured risk here is in Florida.
Section 193 next requires us to determine whether Connecticut has a more "significant relationship" to the parties and the transaction than Florida. In determining whether Connecticut has a more significant relationship to this transaction, it is necessary to examine the section 6 factors of the Restatement. See 1 Restatement (Second), supra, § 193, comment (c), p. 612. Section 6 factors are choice-influencing factors which a court should consider in choosing the applicable law. OSP, Inc. v.Aetna Casualty Surety Co., Superior Court, judicial district of Danbury, Docket No. 326873 (December 8, 1998, Levin, J.) (23 Conn. L. Rptr. 627, 636); see also, Beckler v. State Farm MutualAutomobile Ins. Co., supra, 1999 WL 240486, at *7 (significant relationship test is qualitative rather than quantitative).
As mentioned above, the factors relevant to choosing the applicable rule of law include: the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, the protection of justified expectations, the basic policies underlying the field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied. 1 Restatement (Second) supra, Introduction, § 6(2), p. 10.
 It is not suggested that this list of factors is exclusive . . . Also it is not suggested that the factors mentioned are listed in the order of their relative importance . . . Varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law . . . CT Page 11266 All that can presently be done . . . is to state a general principle, such as application of the local law "of the state of most significant relationship," which provides some clue to the correct approach but does not furnish precise answers. In these areas, the courts must look in each case to the underlying factors themselves in order to arrive at a decision which will best accommodate them." Id., 1 Restatement (Second), supra, § 6(2), comment (c), pp. 12-13.
Section 188(2) lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Reichhold Chemicals, Inc. v. Hartford Accident Indemnity Co., supra, 243 Conn. 409-10.
"[S]tanding alone, the place of contracting is a relatively insignificant contact."[3] OSP, Inc. v. Aetna Casualty SuretyCo., supra, 23 Conn. L. Rptr. 635; 1 Restatement (Second), supra, § 188, comment (e), p. 579. Therefore, the fact that the parties entered into this contract in Florida should not alone be given much weight.
However, the place where the parties negotiated and agreed on the terms of their contract is a highly significant contact. A state in which the terms of the contract were formulated has an obvious interest in the conduct of these negotiations and in the agreement reached. OSP, Inc. v. Aetna Casualty Surety Co., supra, 23 Conn. L. Rptr. 635. The contract here was negotiated in Florida.
The Restatement does not define the term "place of performance." Some jurisdictions hold that the place of performance for an insurance policy, unless the policy explicitly provides otherwise, is where the premiums are received. Connecticut has no such bright-line rule. OSP, Inc. v. AetnaCasualty Surety Co., supra, 23 Conn. L. Rptr. 635; 88(d), p. 575. Because this criterion is one of universal application, and not limited to liability insurance, it does not employ the same language as does § 193 of the Restatement. However, the Official Comment indicates that the same concept as "principal location of the insured risk" is contemplated." OSP, Inc. v. Aetna Casualty Surety Co., supra, 23 Conn. L. Rptr. 635. This court has CT Page 11267 concluded that the principal location of the insured risk in this case is Florida because it is the location of the automobile covered under the policy. It therefore follows that the location of the subject matter of the contract here is Florida.
The last contact to be considered under § 188 in applying the principles of § 6 is the location of the domicile, residency, nationality, place of incorporation and place of business of the parties. See 1 Restatement (Second), supra, § 188, p. 575. This contact is difficult to apply because, although the defendant's place of business was Florida, the defendant has offices all over the United States. Moreover, Allison (the grandmother) resides in both Connecticut and Florida and the plaintiff resides in Connecticut.
Based on § 188(2), Florida's contacts are (1) it is the state of contracting and negotiation, (2) one of the defendant's offices is located there and (3) it is the place of performance. On the other hand, Connecticut's only contact is that it is the residence of the plaintiff and the half-time residence of Allison, the policyholder.
The final step in determining which state's law to apply is to highlight any of the factors under § 6 itself that may further impact on which of these states has the most significant relationship. The first factor under § 6(2) is the needs of the interstate and international systems. 1 Restatement (Second) supra, § 6(a), p. 10. The purpose of this factor is to "further harmonious relations between states and to facilitate commercial intercourse between them." 1 Restatement (Second), supra, § 6(b), comment (d), p. 13. However, concern for the needs of the interstate system does not weigh so heavily here where the defendant insurer has multiple places of business. See OSP, Inc.v. Aetna Casualty Surety Co., supra, 23 Conn. L. Rptr. 636.
The next pertinent factor to consider under § 6 is the relevant policy interest of the forum state, Connecticut. 1 Restatement (Second), supra, § 6(b), p. 10. Connecticut policy appears to be as follows:
 [T] he purpose of underinsured motorist coverage is neither to guarantee full compensation for a claimant's injuries nor to ensure that the claimant will be eligible to receive the maximum payment available under any applicable policy. Indeed, underinsured motorist protection is not intended to CT Page 11268 provide a greater recovery than would have been available from the tortfeasor . . . Rather, [t]he public policy of § 38a-336 is to give a personal injury claimant access to insurance protection to compensate for the damages that would have been recoverable if the underinsured motorist had maintained an adequate policy of liability insurance.
(Citations omitted; internal quotation marks omitted.)
 Fiorestal v. Government Employees Ins. Co., 236 Conn. 299, 310, 673 A.2d 474 (1996).
Connecticut's public policy as to uninsured and underinsured motorist coverage appears to be to provide adequate
recovery rather than the maximum recovery. On the other hand, the relevant policy of Florida, pursuant to Florida Statutes § 627.4132, is that stacking of insurance coverages is generally prohibited except as it applies to uninsured motorist coverage. The statute specifically states that this stacking prohibition does not apply to "(1) [t]o uninsured motorist coverage which is separately governed by § 627.727[4] [and] (2) [t]o reduce the coverage available by reason of insurance policies insuring different named insureds." See Florida Farm Bureau Casualty Co.v. Hurtado, 587 So.2d 1314, 1316 (Fla. 1991) (also stating that denial of stacking generally does not result in windfall to insurer). Thus, the public policy underlying the uninsured motorist statute in Florida is to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injuries caused by the negligence of uninsured/underinsured motorists. Ellsworth v. Ins. Co. of NorthAmerica, 508 So.2d 395, 400 (Fla.App. 1 Dist. 1987). Furthermore, unlike liability coverage, uninsured motorist coverage attaches to the person insured under the policy without consideration of the automobile involved in the accident driven by the insured. Maine v. Hyde and Manchester Ins. Co.,350 So.2d 1161, 1162-63 (Fla.App. 2 Dist. 1977); cert denied, 358 So.2d 132 (1978).
The next factor to consider under § 6 of the Restatement (Second) is the protection of justified expectations. Id., § 6(d), p. 10. Here, besides informing the defendant that she resided in Florida half of the year and in Connecticut the other half of the year, Allison avers that she chose the stacking option in order to protect herself and her resident-relatives. (Allison Affidavit, ¶¶ 4-8.) Consequently, her expectation was that if either she or any of her resident-relatives were in an accident, her policy would compensate them in addition to any other CT Page 11269 policies they may have. (Id., ¶ 6.) Thus, the parties' justified expectations were that Florida law would apply to Allison's policy.
The next factor to consider under § 6 of the Restatement (Second) is the basic policies underlying the particular field of law. Id., § 6(d), p. 10. This factor appears to be of importance only in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved. Id., § 6(e), comment (h), p. 15. However, in the instant case, this factor will not be given much weight because there is a majordifference between the law of Florida and Connecticut. Florida
permits stacking as to uninsured motorist coverage while Connecticut does not.
The next relevant factor to consider under § 6 of the Restatement (Second) is the predictability and uniformity of result. Id., § 6(f), p. 10. These are important values in all areas of the law. To the extent that predictability and uniformity are attained in choice of law, forum shopping will be discouraged. These values can, however, be purchased at too great a price.
 In a rapidly developing area, such as choice of law, it is often more important that good rules be developed than that predictability and uniformity of result should be assured through continued adherence to existing rules. Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions. Id., § 6, comment (i), pp. 15-16.
Our Supreme Court has cautioned against giving this factor undue weight, and furthermore, in insurance cases, it is an illusory goal, not truly achievable or necessarily preferable. ReichholdChemicals, Inc. v. Hartford Accident and Indemnity Co., supra,243 Conn. 419 n. 14.
Lastly, it is true that the ease of applying Connecticut law, as opposed to Florida law, in a Connecticut court weighs in favor of applying Connecticut law. Champaigne v. Scarso, Superior CT Page 11270 Court, judicial district of Fairfield at Bridgeport, Docket No. 348479 (January 27, 1999, Melville, J.) (24 Conn. L. Rptr. 138, 141).
However, considering the weight given to the principal location of the insured risk, Allison's Florida vehicle, this court concludes that it should apply Florida law. Connecticut's only contacts are that the plaintiff lives in Connecticut and that Allison lives in Connecticut half of the year. Furthermore, Connecticut's interest in preventing stacking is no more or less compelling than Florida's interest in allowing stacking. Thus, despite the ease of applying Connecticut law in Connecticut courts, Connecticut does not have a more significant relationship to the parties under the provisions of the Restatement (Second). Moreover, because Florida law applies, Connecticut's statute dealing with stacking is inapplicable. Eased on the foregoing analysis. the defendant's motion for summary judgment should be denied.
The defendants also move for summary judgment on the ground that the Allstate policy which Allison maintained with the defendant did not provide liability coverage to the plaintiff and thus does not provide uninsured motorist coverage to the plaintiff. The defendant applies Connecticut law to reach this conclusion. As the party moving for summary judgment, the defendant is required to support its motion with supporting documentation, including affidavits. Heyman Associates No. 1 v.Ins. Co. of Pennsylvania, 231 Conn. 756, 796, 653 A.2d 122
(1995). Further, Practice Book § 11-10 requires "[a] memorandum of law briefly outlining the claims of law and authority pertinent thereto shall be filed and served by the movant with . . . motions for summary judgment." The defendant has failed to adequately outline any support for its claim under Florida law. As a result, the court should not decide whether Allison's policy covers the plaintiff under Florida law.
Accordingly, for all of the foregoing reasons, the defendant's motion for summary judgment is hereby denied.
Melville, J.