# REICHHOLD CHEMICALS, INC. *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY ET AL.
## (SC 16156)

McDonald, C. J., and Borden, Norcott, Katz, Palmer, Sullivan and Callahan, Js.

Argued February 16—officially released May 3, 2000*

* May 3, 2000, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Francis J. Brady,* with whom were *Barry J. Fleish-man,* pro hac vice, and, on the brief, *Elizabeth J. Stew-art, April Lieberman, Leon B. Kellner,* pro hac vice, and *Robert W. Pommer III,* pro hac vice, for the appellant (plaintiff).

*Stephen A. Fennell,* pro hac vice, with whom were *John L. Altieri, Jr.,* pro hac vice, *John B. Farley* and

*John T. Harris,* and, on the brief, *Charles G. Cole,* pro hac vice, *Mary Woodson Poag,* pro hac vice, *Ralph DeSanto,* pro hac vice, *Michael G. Clear* and *Sheila A. Huddleston,* for the appellees (defendant Home Insurance Company et al.).

*Robert Kehmna* filed a brief for the Insurance Association of Connecticut as amicus curiae.

*Kathleen F. Munroe, Laura A. Foggan,* pro hac vice, *Daniel E. Troy,* pro hac vice, and *Keith U. Kuder,* pro hac vice, filed a brief for the Insurance Environmental Litigation Association as amicus curiae.

*Opinion*

CALLAHAN, J. The principal issue in this appeal is whether the trial court in the present insurance coverage case properly applied New York law under the analytical approach of the Restatement (Second) of Conflict of Laws, which this court adopted in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.,* 243 Conn. 401, 703 A.2d 1132 (1997).

The relevant underlying facts are described fully in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.,* supra, 243 Conn. 401. We briefly review those facts supplemented by certain additional facts relevant to the present appeal. Seeking reimbursement for pollution cleanup costs at various sites in several states, the plaintiff, Reichhold Chemicals, Inc., brought this suit against sixteen primary and excess liability insurance carriers from which it had purchased policies between 1952 and 1985. The trial court divided the action into separate trials based on site location. The trial at issue in the present appeal concerned only the plaintiff's facility located in Tacoma, Washington. Because of settlements and other proceedings, there

now remain only six defendants,[1] all excess liability carriers who either were headquartered in New York or who dealt with the plaintiff through their New York offices.

The trial court bifurcated the trial into separate notice and coverage phases. At the first phase, the trial court determined that New York law applied to the issue of notice compliance and so instructed the jury. After the jury rendered a verdict in the defendants' favor, the plaintiff appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

In *Reichhold Chemicals, Inc.*, we considered whether the trial court was correct when it applied New York law to the issue of notice compliance under our traditional lex loci contractus approach to choice of law questions. Prior to our decision in that case, we had moved away from the lex loci approach of the Restatement of Conflict of Laws § 332 et seq. (1934), and toward the more flexible "most significant relationship" approach taken in the Restatement (Second) of Conflict of Laws § 188 (1971) in other substantive areas of the law. *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 412–13, citing *Elgar* v. *Elgar*, 238 Conn. 839, 840, 679 A.2d 937 (1996) (antenuptial contract); *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 182, 588 A.2d 194 (1991) (workers' compensation); *O'Connor* v. *O'Connor*, 201 Conn. 632, 633–64, 519 A.2d 13 (1986) (tort claim). As we noted then, this shift was consistent with the modern trend of many

---

[1] "The six remaining defendants are American Home Assurance Company, Century Indemnity Company, Commercial Union Insurance Company, Granite State Insurance Company, The Home Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania. Hereafter, we refer to the six remaining defendants as the defendants." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 404 n.2.

jurisdictions. Ultimately, we determined in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 406–14, that the most significant relationship approach of the Restatement (Second) should be followed in contract cases. We therefore adopted "the . . . general presumption [of the Restatement (Second), supra, § 188], which provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied. We also [adopted, however,] the . . . special presumption for liability insurance contracts [of the Restatement (Second), supra, § 193], which provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the insured risk is located should be applied." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 414. We subsequently concluded that Washington law should apply to the issue of notice compliance. Id., 423. We therefore reversed the judgment of the trial court and remanded the case for a new trial. Id., 426.

Upon the remand, there arose the two additional choice of law issues that are the subject of this appeal, namely, the pollution exclusion clauses in the relevant policies and the question of allocation of damages. The remaining defendants issued policies containing pollution exclusion clauses that excluded from coverage all pollution that is not "sudden and accidental" or "sudden, unexpected and unintended," the exact language depending on the particular policy.[2] The laws of New York and Washington differ with respect to the interpre-

---

[2] Pollution exclusion clauses were included in all of the policies issued to the plaintiff by the defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Granite State Insurance Company. Each of the other defendants issued policies containing pollution exclusion clauses, but not all of their respective policies included such clauses.

tation of "sudden." The Washington Supreme Court has concluded "that 'sudden' means 'unexpected' in the context of CGL [Comprehensive General Liability] policies . . . . Thus [with respect to pollution coverage in Washington,] 'sudden and accidental' means 'unexpected and unintended'." *Queen City Farms, Inc.* v. *Central National Ins. Co.*, 126 Wash. 2d 50, 90, 882 P.2d 703 (1994). The Court of Appeals of New York, on the other hand, has emphasized "the temporal element of *sudden*—as an abrupt happenstance . . . ." (Emphasis in original.) *Northville Industries Corp.* v. *National Union Fire Ins. Co.*, 89 N.Y.2d 621, 633, 679 N.E.2d 1044, 657 N.Y.S.2d 564 (1997); id., 634 ("abruptly or within a short timespan"). Under New York law, "for a release or discharge to be 'sudden' within the meaning of [a] pollution exclusion, it must occur abruptly or quickly or 'over a short period of time . . . .' " *Borg-Warner Corp.* v. *Ins. Co. of North America*, 174 App. Div. 2d 24, 31, 577 N.Y.S.2d 953, leave to appeal denied, 80 N.Y.2d 753, 600 N.E.2d 632, 587 N.Y.S.2d 905 (1992).

The laws of Washington and New York also differ with respect to the question of allocation of damages. New York law rejects joint and several liability in favor of a pro rata allocation of covered property damage that occurs during the policy period based on the time during which the insurer was on the risk. *Stonewall Ins. Co.* v. *Asbestos Claims Management Corp.*, 73 F.3d 1178, 1203 (2d Cir. 1995); *Olin Corp.* v. *Ins. Co. of North America*, 986 F. Sup. 841, 844–45 (S.D.N.Y. 1997); *Uniroyal, Inc.* v. *Home Ins. Co.*, 707 F. Sup. 1368, 1392 (S.D.N.Y. 1988); *Diamond Shamrock Chemicals Co.* v. *Aetna Casualty & Surety Co.*, 258 N.J. Super. 167, 244–45, 609 A.2d 440 (1992), cert. denied, 134 N.J. 481, 634 A.2d 528 (1993) (interpreting New York law). The Washington Supreme Court, however, has rejected a pro rata allocation of liability and has indicated that any insurer that was on the risk when a triggering event occurred

will be jointly and severally liable for the entire amount of damages up to its policy limits. *American National Fire Ins. Co.* v. *B & L Trucking & Construction Co.*, 134 Wash. 2d 413, 428–29, 951 P.2d 250 (1998).

Upon remand in this case following *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 401, the trial court, as a preliminary matter, conducted a choice of law analysis beginning with the presumption that the law of the site applied. See 1 Restatement (Second), supra, § 193. It determined, however, that "New York has an overriding interest in having its laws applied to the issues of the pollution exclusion and allocation of damages."

Relying on the court's determination that New York law applied, the defendants moved for summary judgment on two grounds. First, they sought summary judgment on the ground that the pollution exclusion clauses contained in their policies precluded coverage because the spills for which coverage was sought were not "sudden" as New York law defines that term. Second, the defendants asserted that they were entitled to summary judgment because New York law, which requires allocation, so limited the recoverable damages that the damages would not reach their respective excess liability coverages.

The trial court granted summary judgment as to two defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Granite State Insurance Company, whose policies included pollution exclusion clauses. That court granted partial summary judgment as to the other defendants, namely, American Home Assurance Company, Century Indemnity Company, Commercial Union Insurance Company and The Home Insurance Company, on certain policies. Some of the policies issued by those other defendants, however, did not include such clauses. With respect to allocation,

the trial court granted summary judgment to the five defendants that had moved for summary judgment,[3] concluding that the method of allocating damages precluded any of the excess policies from being triggered because the respective threshold amounts would not be reached. The court noted that, even if the plaintiff's maximum potential damage figure were accepted, the primary and other underlying layers of excess coverage would cover the maximum amount allocable to each year without the defendants' policy amounts being reached. Accordingly, the trial court rendered summary judgment for the defendants. The plaintiff appealed from the judgment to the Appellate Court, and upon the plaintiff's motion, we transferred the appeal to this court, pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

The plaintiff claims that the trial court should have applied Washington law rather than New York law to the pollution exclusion and damage allocation clauses of its liability insurance policies. We agree.

Under the framework that we adopted in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 407, 414, Connecticut's choice of law approach for contracts is the "most significant relationship" test of the Restatement (Second), supra, § 188. The choice of law determination in this case involves an interplay among §§ 193, 188 and 6 of the Restatement (Second), supra. Where there is no choice of law provision in the contract, the general rule to be applied is that of § 188.[4] Section 188, in turn, directs us to other provisions for specific types of contracts.

---

[3] The Home Insurance Company did not move for summary judgment on this issue, presumably because its threshold level of coverage was lower as a first layer excess coverage provider.

[4] Section 188 of the Restatement (Second), supra, provides: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second), supra, which creates a rebuttable presumption in favor of the state where the insured risk is located. In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6 (2) of the Restatement (Second), supra, provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6 (2), that interest will not defeat the § 193 presumption unless it is sufficiently compelling. As we indicated in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 417, the analysis begins but does not end with § 193.

Section 193 of the Restatement (Second), supra, provides: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, *unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.*" (Emphasis added.)

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."

"Section 6 (2) of the Restatement (Second), [supra] which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the 'most significant relationship': '(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.' " *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 409.

"[T]he contacts to be taken into account in applying the principles of § 6 [of the Restatement (Second), supra] to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." 1 Restatement (Second), supra, § 188 (2).

*Reichhold Chemicals, Inc.*, dealt only with the issue of notice compliance and does not preclude the application of the law of a state other than Washington to other issues in the case, a principle known as depecage.[5] Nevertheless, in the light of our determination of the interests of the respective states of Washington and New York in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 414–16, and the apparent similarity of concerns with respect to

[5] The principle of depecage has been "described as the framework under which different issues in a single case . . . may be decided according to the substantive law of different states." (Internal quotation marks omitted.) *Crellin Technologies* v. *Equipmentlease Corp.*, 18 F.3d 1, 11 (1st Cir. 1994), quoting *Putnam Resources* v. *Pateman*, 958 F.2d 448, 465 (1st Cir. 1992).

the issues in this appeal, a principled explanation would be required to justify a different result in the present case. We can discern no rationale for such an explanation. We therefore conclude that the respective interests of New York and Washington, which this court identified in *Reichhold Chemicals, Inc.*, exist with equal force here.

As we noted in *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 414, New York has a public policy interest in limiting the availability of liability coverage, which reflects both its concern for protecting insurers and its desire "to deter deliberate pollution by withholding the shelter of liability insurance for injuries resulting from such conduct." *Technicon Electronics Corp.* v. *American Home Assurance Co.*, 141 App. Div. 2d 124, 143, 533 N.Y.S.2d 91 (1988), aff'd, 74 N.Y.2d 66, 542 N.E.2d 1048, 544 N.Y.S.2d 531 (1989). Because the plaintiff and three of the defendants are headquartered in New York and the other defendants negotiated and executed the insurance contracts through their New York offices; see 1 Restatement (Second), supra, § 188 (2); the application of New York law would further New York's public policy of limiting liability coverage in order to deter deliberate pollution and to protect insurers.

Washington has an interest in the application of its own law because the location of the insured risk is Tacoma, Washington. See 1 Restatement (Second), supra, §§ 188 (2) (d) & 193. "Washington courts . . . . have recognized that the state in which the hazardous waste site is located has a compelling interest in the application of its own law. 'Washington has a paramount interest in the health and safety of its people. Washington bears the responsibility under [the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)] for ensuring the site cleanup and will bear the burden if the site is not

cleaned. The existence or absence of insurance proceeds can determine whether or not a hazardous waste site is remediated. Washington, therefore, has a significant interest in [the plaintiff's] insurance coverage.' *Canron, Inc.* v. *Federal Ins. Co.*, [82 Wash. App. 480, 494, 918 P.2d 937 (1996)]." *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, supra, 243 Conn. 416. The application of Washington law, whose public policy favors construing insurance policies in favor of coverage, advances Washington's interest in protecting its environment and its citizens, both as taxpayers and as inhabitants.

On the basis of this comparison of the interests of New York and Washington, we cannot conclude that New York's interests so substantially outweigh Washington's interests as to overcome the presumption of § 193 of the Restatement (Second), supra. Moreover, New York's public policy limiting coverage is undercut by the fact that the section of the New York insurance law that was enacted in 1971 to require pollution exclusion clauses in general liability policies; 1971 N.Y. Laws c. 765; was repealed in 1982. 1982 N.Y. Laws c. 856. Under the 1982 revision, pollution exclusion provisions are permissible but no longer mandatory. Whereas the 1971 language was presented as a means of deterring pollution by forcing industry to bear the costs of clean-up, the 1982 revision was presented as part of a revised comprehensive package to help industry manage risks and to protect the public. The official memorandum by New York state Senator John R. Dunne, a sponsor of the 1982 bill, noted that the former rationale had not held up in practice and that insurance should now be viewed as a legitimate and sensible means of providing clean-up costs and protecting the public and the envi-

ronment.[6] See also New York State Legislative Annual–1982, Governor's Approval Memorandum, p. 272 ("[t]he bills represent a major step in our comprehensive effort to encourage industry responsibly to handle its hazardous wastes and eliminate the attendant risks, and simultaneously to safeguard the public from the adverse consequences of hazardous waste handlers which become financially disabled"). At the very least, this change of focus represents an erosion of New York's previous public policy precluding pollution coverage. It is difficult for us to conclude that a public policy interest enunciated in 1971 and subsequently recanted in 1982 should control our interest analysis today.[7]

Connecticut's present interests are limited by the fact that its sole contact with the litigation is that it provides the forum. See 1 Restatement (Second), supra, § 6 (2), comment (e), p. 13. We may not "ignore well-established principles of the conflict of laws [or] disregard the law

---

[6] Senator Dunne's memorandum provided in part: "The purpose of this bill is to authorize the sale of 'gradual' or 'nonsudden' pollution liability insurance in New York. In 1971, then Governor [Nelson] Rockefeller, signed a bill into law that prevented the writing of gradual pollution liability insurance. The law was based on the rationale that polluters 'might pollute with impunity' if such liability coverage was available. The tragedy at Love Canal and the potential for similar incidents has changed that rationale. A *new public policy* would be forged by the bill in New York. That public policy would demand swift and just compensation for persons who are injured, made sick, or whose property has been damaged because of someone else's pollution, gradual or otherwise. Liability insurance can help provide the financial resources from which such compensation can be made. . . . Through the loss prevention programs of the insurance industry and selective underwriting, the net result will be to foster maximum protection of the environment, make available compensation for those injured or whose property is damaged, and reduce government involvement." (Emphasis added.) New York State Legislative Annual–1982, Memorandum of Senator John R. Dunne, p. 271.

[7] The defendants assert that the 1971 policy rationale is also relevant to the justified expectations of the parties. This argument places the cart before the horse because it relies on the assumption that New York law would apply. For the reasons we discuss subsequently, the defendants were not justified in that assumption.

of a sister state affecting substantive rights merely because that law differs from our own." *Bohenek* v. *Niedzwiecki*, 142 Conn. 278, 284, 113 A.2d 509 (1955). The contacts listed in § 188 that are to be taken into account in applying § 6 are conspicuously absent from the present case. Although the primary insurers are headquartered in Connecticut, they are no longer involved in the action and were never part of this appeal. The plaintiff is headquartered in New York. The plaintiff's insurance broker is located in New York. Three of the defendant insurance companies are based in New York, the others being based in Massachusetts, Pennsylvania and New Hampshire. The defendants negotiated, executed and administered their policies with the plaintiff through their New York offices. The only site at issue in the trial is located in Tacoma, Washington. At this stage of the litigation, Connecticut has no contacts other than providing the forum, nor have the defendants pointed to any important Connecticut public policy that would be offended by the application of either New York or Washington law.

As an additional important consideration, the application of a state's law should not run counter to the justified expectations of the parties, which is "the basic policy underlying the particular field of contracts." 1 Restatement (Second), supra, § 188, comment (b), p. 577. Applying Washington law, however, does not violate the justified expectations of the parties when the targeted site is in Washington and the other risks that they insured are located in multiple jurisdictions all outside New York. The defendants expressly concede that the highest courts of eleven states construe the pollution exclusion clause consistent with the law of Washington, as opposed to that of New York. See *Alabama Plating Co.* v. *United States Fidelity & Guaranty Co.*, 690 So. 2d 331, 336 (Ala. 1996); *Hecla Mining Co.* v. *New Hampshire Ins. Co.*, 811 P.2d 1083, 1092 (Colo.

1991); *Claussen* v. *Aetna Casualty & Surety Co.*, 259 Ga. 333, 338, 380 S.E.2d 686 (1989); *Outboard Marine Corp.* v. *Liberty Mutual Ins. Co.*, 154 Ill. 2d 90, 129, 607 N.E.2d 1204 (1992); *American States Ins. Co.* v. *Kiger*, 662 N.E.2d 945 (Ind. 1996); *Morton International, Inc.* v. *General Accident Ins. Co.*, 134 N.J. 1, 61, 629 A.2d 831 (1993), cert. denied, 512 U.S. 1254, 114 S. Ct. 2764, 129 L. Ed. 2d 878 (1994); *St. Paul Fire & Marine Ins. Co.* v. *McCormick & Baxter Creosoting Co.*, 324 Or. 184, 213, 923 P.2d 1200 (1996); *Greenville County* v. *Insurance Reserve Fund*, 313 S.C. 546, 548, 443 S.E.2d 552 (1994); *Queen City Farms, Inc.* v. *Central National Ins. Co.*, supra, 126 Wash. 2d 50; *Joy Technologies, Inc.* v. *Liberty Mutual Ins. Co.*, 187 W. Va. 742, 748–49, 421 S.E.2d 493 (1992); *Just* v. *Land Reclamation, Ltd.*, 155 Wis. 2d 737, 758–59, 456 N.W.2d 570 (1990). None of the defendants availed themselves of choice of law provisions in their policies, even though the laws of New York, Connecticut and Washington favor enforcement of contractual choice of law provisions, as does the Restatement (Second). See *Krock* v. *Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996); *McGowan* v. *Pillsbury Co.*, 723 F. Sup. 530, 537 (W.D. Wash. 1989); *Pollak* v. *Danbury Mfg. Co.*, 103 Conn. 553, 557, 131 A. 426 (1925); 1 Restatement (Second), supra, § 187. To the contrary, the trial court concluded in its February 24, 1993 memorandum of decision regarding choice of law that "[t]hese insurance companies which write thousands of contracts have deliberately omitted the choice of law provision from these contracts." The plaintiff, on the other hand, might justifiably expect that its insurers would cover damages related to the insured risk according to the law of the site of the risk.

Finally, the interests of uniformity and predictability within Connecticut's forum are well served by our holding today because insurers will be on notice that the "most significant interest" test mandates that, in the

absence of extraordinary circumstances, the law of the state where the principal insured risk is located will apply. We will depart from this rule only in those exceptional circumstances where the interests of another state substantially outweigh the interests of the site state.

We conclude that New York's interest is not sufficiently compelling to overcome the presumption in favor of Washington law. We therefore conclude that, pursuant to Restatement (Second), supra, § 193, Washington law should be applied to the pollution exclusion and allocation issues.

The judgment is reversed and the case is remanded with direction to deny the motions for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.