[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case, plaintiff Interface Flooring Systems, Inc. ("Interface"), a Georgia corporation engaged in the carpet-tile business worldwide, has sued three related Connecticut insurance companies, defendants Aetna Casualty Surety Corporation, The Standard Fire Insurance Company, and The Automobile Mutual Insurance Company of Hartford, Connecticut (collectively "Aetna"), for breach of contract under a series of comprehensive and commercial general liability insurance policies ("the Policies") it purchased from them in and for the period from July 1, 1986 through July 1, 1991.[1] In its one-count Complaint dated February 3, 1993, Interface alleges that Aetna breached its duties under the Policies by failing and refusing to reimburse it for costs it incurred in defending a lawsuit brought against it by one of its CT Page 2788 competitors, Milliken Company ("Milliken"), in 1990.
In the underlying lawsuit,[2] Milliken sought to recover damages from Interface for alleged copyright infringement and unfair and anti-competitive trade practices in the design, manufacture, and sale of certain office carpeting products. Interface defended the lawsuit by hiring experienced Georgia and New York counsel, filing its own counterclaim against Milliken, and ultimately setting the entire action on non monetary terms approximately six months later. In so doing, Interface incurred defense costs in excess of $330,000.
Though Interface defended the Milliken lawsuit, from start to finish, without ever giving notice of its pendency to Aetna, it now seeks reimbursement from Aetna for all costs associated with the defense of that suit, including those incurred in bringing the counterclaim and negotiating a final settlement. On that score, Interface argues: first,
that it is entitled, under the Policies, both to be indemnified by Aetna for any damages arising from a "covered claim" and to be defended by Aetna in any suit to recover such damages; second, that as part of Aetna's duty to defend it, Aetna must pay all costs reasonably incurred by it in the defense of such a suit; third, that a claim for damages for copyright infringement is a "covered claim" because copyright infringement is an "advertising injury," for which the Policies expressly provide coverage; and thus, fourth and finally, that since the Milliken
lawsuit was a suit to recover damages for copyright infringement, a covered claim, Aetna is bound by the Policies to reimburse it for all reasonable expenses, including attorneys' fees, it incurred in defending that suit.
Aetna has answered Interface's Complaint, inter alia, by denying that it has any duty under the Policies to reimburse Interface for its pre-tender expenses in defending the Milliken lawsuit. In addition, it has interposed several special defenses, including the following:
First Special Defense
 The plaintiff breached one or more of the policy conditions in that: (a) the plaintiff failed to give timely notice of the occurrence; (b) the plaintiff failed to immediately forward to the defendants every demand, notice, summons or other process received by the plaintiff or the plaintiffs representative; and the plaintiff failed to cooperate with the defendants in making settlements and in the conduct of suit in the Milliken litigation which gives rise to the plaintiffs present claim for reimbursement[; and] CT Page 2789
 * * * * Third Special Defense
 The policy or policies under which the plaintiff seeks recovery do not obligate the defendants to reimburse an insured for costs associated with defending a claim in that: (a) such costs are not covered by the insuring agreement of such policy or policies; [and] (b) as such costs were voluntarily incurred by the plaintiff without the consent of the defendant [sic] they are its own costs and not subject to reimbursement pursuant to the express terms of the Conditions in the applicable policy or policies.
First Special Defense (Jul. 16, 1993) and Amended Third Special Defense (Apr. 9, 1999). Interface has denied each essential allegation of these special defenses.
The case is now before the Court for decision on Aetna's Amended Motion for Summary Judgment ("Amended Motion") dated November 24, 1998. In that Motion, which was filed in lieu of an earlier Motion for Summary Judgment dated December 30, 1993, Aetna asserts that it is entitled to judgment as a matter of law because, on the undisputed facts of record, there is no genuine issue of material fact as to the legal sufficiency of the following defenses to Interface's claim:
 1. There is no coverage for the pre-tender defense expenses incurred by plaintiff under the policies' coverage provisions and said expenses are specifically excluded from coverage by the policies[; and]
 2. The plaintiff breached its obligations under the cooperation clause, the notice of claim provision, and the no voluntary payments clauses [of the policies].
Amended Motion, p. 1. In support of this Motion, Aetna has filed and relies upon several supporting memoranda of law and the following documents and materials: true copies of all of the Policies (Exhibits A-1 — A-5);[3] a letter from H. William Petry to Interface dated September 18, 1987 (Exhibit B); Interface's response to Interrogatory #11 dated April 23, 1993 (Exhibit C); an affidavit from Peggy Drugan dated October 21, 1993 (Exhibit D); the Complaint in the Milliken lawsuit dated March 1, 1990 (Exhibit E); Interface's Answer and Counterclaim in theMilliken lawsuit dated May 18, 1990 (Exhibit F); the Settlement Agreement CT Page 2790 between Interface and Milliken dated September 25, 1990 (Exhibit G); an extract from the deposition of Richard C. Fuller dated February 8, 1994, pp. 1-4, 25, 141-142 (Exhibit H); an extract from the deposition of Alan S. Nelson dated December 12, 1995, pp. 1-5, 31, 87-88 (Exhibit I); and a letter from Raymond S. Willoch to Kathy Barnes dated April 29, 1991 (Exhibit J).
Interface has vigorously opposed Aetna's Amended Motion on a number of legal and factual grounds. In support of its position, it has submitted several opposing memoranda of law and the following additional documents and materials for the Court's consideration: letters to R. Bradford Fawley from Rodd J. Mantell, dated November 8, 1995, and from Eugene A. Cooney, dated December 18, 1995 (Interface Exhibit A); and an affidavit from David W. Porter dated January 5, 1996 (Interface Exhibit B), with attached letters to David W. Porter from Susan Shaughnessy, dated July 30, 1992 (Interface Exhibit B-1), and Jo Frith, dated July 26, 1993 (Interface Exhibit B-2).
For the following reasons, the Court concludes that Aetna is entitled to judgment as a matter of law on the first ground asserted in its Amended Motion, to wit: that the Policies here at issue provide no coverage for the pre-tender expenses incurred by Interface in defending the Milliken lawsuit.
 I. THIS CASE IS GOVERNED BY GEORGIA LAW
The claims presented in this lawsuit require the interpretation of certain comprehensive and commercial general liability insurance policies. Though the Policies contain no language specifying which state's law should govern their interpretation, Georgia is the state with the greatest interest in their effective enforcement, and thus the state whose law must control.
In Reichhold Chemicals, Inc. v. Hartford Accident Indemnity,252 Conn. 774, ___ A.2d ___ (2000) (Reichhold II), our Supreme Court recently confirmed that "Connecticut's choice of law approach for contracts is the `most significant relationship' test of the Restatement (Second) [Conflict of Laws], § 188." Id., at 781 (quoting its earlier decision in the same case, Reichhold Chemicals, Inc. v. Hartford Accident Indemnity, 243 Conn. 401, 407, 414, 703 A.2d 1132 (1997) (ReichholdI)). Under that test, the Court observed, "[w]here there is no choice of law provision in the contract, the general rule to be applied is that of § 188."[4] Reichhold II, supra, 252 Conn. at 781.
"Section 188," the Court continued,
CT Page 2791 directs us to other provisions for specific types of contracts.
 With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second), supra, which creates a rebuttable presumption in favor of the state where the insured risk is located. In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6(2) of the Restatement (Second), supra, provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6(2), that interest will not defeat the § 193 presumption unless it is sufficiently compelling. As we indicated in Reichhold [I], supra, 243 Conn. 417, the analysis begins but does not end with § 193.
 Section 193 of the Restatement (Second), supra,
provides: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." (Emphasis added.)
 "Section 6(2) of the Restatement (Second), [supra] which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the `most significant relationship': `(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of CT Page 2792 the law to be applied.'" Reichhold [I], supra, 243 Conn. 409.
 "[T]he contacts to be taken into account in applying the principles of § 6 [of the Restatement (Second), supra] to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." 1 Restatement (Second), supra, § 188(2).
Reichhold II, supra, 252 Conn. at 782-83.
Applying these principles to this case, there is no question that Georgia is the state with the most significant relationship to this dispute. First, though the plaintiff does business around the world, it manufactures its products in six American states, including Georgia. Thus the location of the insured risk, or at least a significant part of it, was in Georgia when the Policies were issued.
Second, the plaintiff insured is a Georgia corporation with its principal place of business in Georgia. As a corporation's corporate headquarters is the place where its marketing and advertising activities are directed, Georgia is also, in that sense, the location of the insured risk in this action to recover costs to defend a damages suit for copyright infringement and unfair competition.
Third, virtually all of the contacts to be taken account of in applying Section 6(2) of the Restatement (Second) took place in Georgia. The subject Policies were contracted for in Georgia, having been procured there in the ordinary course of business through a Georgia insurance broker, J. Smith Lanier Co. of Atlanta, which represented defendant Aetna in that State. They were to be performed there, to the extent that many of the plaintiffs manufacturing facilities were situated in Georgia. Finally, to reiterate, the plaintiff was domiciled in Georgia.
Fourth, consistent with the issuance of the Policies in Georgia, they contain several endorsements specifically required by and enforceable under Georgia law. The inclusion of these endorsements, expressly binding upon the parties in all of their dealings in connection with the Policies, clearly supports the view that the parties expected the Policies to be interpreted under Georgia law. Significantly, though the plaintiff conducted its business around the world, none of the Policies CT Page 2793 contains a comparable endorsement referencing the law of any other state or country.
The plaintiff suggests that notwithstanding the above-stated facts, this Court should apply Connecticut law to this controversy because of our State's strong public policy in favor of preserving the rights of policyholders to receive the benefits due them under their insurance policies despite late notice to their insurers of their claims. Unlike Connecticut, claims the plaintiff, Georgia does not excuse an insured from providing late notice of a claim to its insurer on the ground that the insurer has not been prejudiced by such late notice. Compare AetnaCasualty Surety Co. v. Murphy, 206 Conn. 409, 538 A.2d 219 (1988) (establishing the more lenient Connecticut rule) with Richmond v. GeorgiaFarm Bureau Mut. Ins. Co., 140 Ga. App. 215, 222, 213 S.E.2d 245 (1976) (stating that in Georgia, an insurer need not prove that it has been prejudiced to prevail on its late-notice defense).
There is no doubt that Connecticut has an interest in protecting the rights of policyholders to receive the benefit of their bargains with insurers, at least where the policyholders' non-compliance with policy conditions has not prejudiced the insurer. In fact, that very interest was recognized by our Supreme Court in Reichhold I, supra,243 Conn. at 418. Even so, in this case, there are two primary reasons why Connecticut's acknowledged interest must not be held to overcome the interests of the State of Georgia. First, to reiterate, all of the parties' contacts with respect to these insurance policies took place in Georgia. To apply Connecticut law here would fail to protect their justified expectations. Second, the issue to be decided on this motion is not whether or not the insured, by late notice, has forfeited its right to be defended or indemnified for an otherwise covered claim, but whether or not his claim for reimbursement of pre-tender defense expenses is covered at all under the terms of his insurance policy. In that respect, both Connecticut and Georgia share the view that the coverage provided under an insurance policy is a matter of contract, and thus must be based on the terms of the policy, not the Court's equitable view of what it might or ought to have covered had it been written differently. See,e.g., Lyon v. Aetna Casualty Surety Co., 140 Conn. 304, 307, 99 A.2d 141
(1953) (an insurance policy is a contract that must be interpreted and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy); Gottesman v. Aetna Ins. Co.,177 Conn. 631, 634-37, 418 A.2d 944 (1979) (same). Therefore, since Georgia's interest in the resolution of this controversy is far greater than our own, this case must be decided under controlling principles of Georgia law.
 II. GEORGIA'S LAW CONCERNING
CT Page 2794 REIMBURSEMENT OF PRE-TENDER EXPENSES
Under Georgia law, it is well settled that "the duty of an insurer to defend its insured is determined by the contract of insurance."Presidential Hotel v. Canal Ins. Co., 188 Ga. App. 609, 610, 373 S.E.2d 671
(1988). Thus, to determine the scope of an insurer's duty to defend in Georgia — and, in particular, to determine if the insurer is required, as part of that duty, to reimburse its insured for defense expenses incurred by the insured before it notified the insurer of the suit, and thereby tendered its defense — a court must look to the language of the policy in question and be guided by it.
To date, the appellate courts of Georgia have decided only one case where the question presented was whether or not an insurer was required by the terms of a liability insurance policy to reimburse its insured for pre-tender legal expenses. In that case, O'Brien Family v. Glens Falls,218 Ga. App. 379, 461 S.E.2d 311 (1995), the Georgia Court of Appeals agreed with the trial court that the defendant insurer was entitled to summary judgment on Interfaces' claim for reimbursement of such pre-tender expenses.
The plaintiffs in O'Brien, a family trust and two family members, sued defendant Glens Falls, their liability insurer, to recover legal expenses they incurred in defending a lawsuit for over three years before finally notifying the insurer of the suit, and thereby tendering its defense. Without issuing a reservation of rights letter, the insurer substituted its own counsel for the O'Briens' counsel, settled the suit, and voluntarily reimbursed the O'Briens for all expenses they incurred after the O'Briens gave notice of the suit but before the insurer took over its defense. The insurer refused, however, to reimburse the O'Briens for any of their expenses prior to notice and tender.
When the O'Briens sued the insurer to recover their pre-tender legal expenses, they claimed that the insurer was bound to reimburse them both contractually and equitably. The latter claim, which sounded in estoppel, was based upon the insurer's failure to issue a reservation of rights letter or to secure a non-waiver agreement with them when it undertook their defense. The trial court disagreed. It held that the insurer could not be required to reimburse the plaintiffs for their pre-tender legal expenses because there was no coverage for such expenses under the plain terms of the plaintiffs' insurance policy.
On the plaintiffs' appeal from the trial court's decision, the Court of Appeals examined their Glens Falls insurance policy and agreed with the trial court that it provided no coverage for their pretender legal expenses. The Court considered the following policy provisions in making CT Page 2795 its analysis. First, the policy "required that the [plaintiffs] give written notice of a claim under the policy as soon as possible." Id., at 380. Second, "[i]t required that they immediately send [the insurer] `every demand, notice, summons or other papers received' in any lawsuit filed against them." Id. Third and finally,
 [a]s to legal costs, the policy obligated Glens Falls [the insurer] to pay the expenses it incurred in providing the O'Briens a defense, any court costs charged to the O'Briens, any interest added to the judgment, and any reasonable expenses that the O'Briens incurred incident to Glens Falls' request for assistance. However, the policy made no provision for the payment of pre-tender legal expenses.
Id., at 380-81. Against that background, the Court concluded that
 the policy did not obligate [the insurer] to pay pre-tender legal expenses incurred by the [insureds]. Such a construction would render contractual terms necessary to trigger [the insurer's] performance under the policy meaningless.
Id., at 381.
Since O'Brien was decided, the United States Court of Appeals for the Eleventh Circuit has expressly invoked and relied upon it as binding Georgia precedent in denying a similar claim for reimbursement of pre-tender legal expenses against a commercial liability insurer. ElanPhar. Res. v. Employers Ins., Wausau, 144 F.3d 1372 (11th Cir. 1998). The plaintiffs in Elan, an Irish company and its Georgia subsidiary, sought reimbursement from the defendant insurer for costs they had incurred in defending against a patent infringement lawsuit for a mere two months before giving notice of the suit to their insurer, and thereby tendering its defense. The district court granted the defendant's motion for summary judgment on the plaintiffs' claim for reimbursement of pre-tender legal expenses, concluding that the insurer was not liable for such expenses under Georgia law.
The Eleventh Circuit affirmed the district court's ruling on the following basis. First, because O'Brien was the only case in Georgia where the reimbursability of pre-tender legal expenses had ever been addressed, the Court compared the language of the policy at issue inO'Brien with that of the policies before it. Concluding that the latter were "similar to the [former] in all salient respects[,]" id. at 1381, CT Page 2796 the Court succinctly described their common features as follows:
 The policy is silent on the issue of pre-tender expenses but includes terms that require the insured to provide notice of potential claims "as soon as practicable" and to forward all papers connected with lawsuits "immediately."
Elan Phar. Res. v. Employers Ins., Wausau, supra, 144 F.3d at 1381-82. It therefore decided that since the rule announced in O'Brien was one of "general applicability," id. at 1382, the district court,
 as a federal court sitting in diversity. . . . had no choice but to apply it. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188
(1938). Applying that rule to this case, we hold that [the insured] did not trigger Wausau [the insurer]'s duty to defend until it tendered notice of the [underlying] lawsuit on September 11, 1992 and that, as a result, Wausau is not liable for the litigation expenses Elan incurred before that date. . . . The O'Brien court's legal decision that the provision of notice to the insurer triggers the duty to defend compels our conclusion that the obligation does not include expenses incurred before that notification. We affirm the district court's partial grant of summary judgment on this issue.
Elan Phar. Res. v. Employers Ins., Wausau, supra,144 F.3d at 1382.
The rule of O'Brien, as followed in Elan, is as follows: Where an insurance policy "is silent on the issue of pre-tender expenses but includes terms that require the insured to provide notice of potential claims `as soon as practicable' and to forward all suit papers connected with lawsuits `immediately,'" id. at 1382, the insurer's duty to defend the insured in a lawsuit for a covered claim is not triggered until the insured gives notice of the suit to the insurer, and thereby tenders the defense of that suit. Under such a policy, the insured's pre-tender legal expenses are not reimbursable unless other language in the policy specifically so provides.
 III. APPLYING THE RULE OF O'BRIEN AND ELAN TO THE POLICIES AT ISSUE IN THIS CASE
The Policies under which Interface seeks reimbursement for its CT Page 2797 pre-tender defense expenses in the Milliken lawsuit are functionally identical to those under which similar relief was sought and denied inO'Brien and Elan. First, they contain mandatory notice-of-occurrence and notice-of-suit provisions with which Interface had to comply before Aetna's contractual duties to defend and indemnify it could ever be triggered. Because Aetna, in light of those provisions, had no duty to defend Interface in any claim or suit lawsuit before Interface gave it notice of that claim or suit, it likewise had no duty to reimburse Interface for costs it incurred defending such a suit before notice of suit was duly given.
Second, each of the Policies contains two discrete provisions which prohibited Interface from incurring and later seeking reimbursement for defense costs without Aetna's consent. One such provision expressly forbade Interface, except at its own expense, from incurring any costs for the investigation or defense of any claim or suit unless Aetna so requested. The other provision, which dovetails neatly with the first, expressly limits Aetna's contractual obligation to pay investigative or defense costs incurred by Interface to those it incurred at Aetna's request. These provisions unambiguously establish that Interface has no right under the subject Policies to be reimbursed for costs it incurred in defending the Milliken lawsuit before it gave notice of that lawsuit to Aetna.
 Policies A-1 and A-2
The first two Policies here at issue, Policies A-1 and A-2, are identical to each other in all material respects. They both describe Aetna's [the insurer's] duties to Interface [the insured] with respect to covered claims for "advertising injury" in the following language:
 II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE (A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies,
sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury,
even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be CT Page 2798 obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
 * * * *
(D) Additional Definitions
 "Advertising injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition. or infringement of copyright, title or slogan.
 * * * *
Policy A-1, Bates #I001208; Policy A-2, Bates #I001208. (Emphasis added.) So written, these provisions gave Aetna full responsibility to defend any claim or suit against Interface to recover damages for an advertising injury covered by the Policies. No less importantly, they gave Aetna complete control over the manner in which the defense would be managed and conducted, explicitly empowering it, inter alia, to investigate and/or settle the case "as it deem[ed] expedient." Id.
To preserve and protect Aetna's exclusive right to control the defense of any claim or suit it had the contractual duty to defend, the Policies imposed certain mandatory duties upon Interface as well. Those mandatory duties, and the sanctions imposable upon Interface for failing to perform them, are set forth as follows in the "CONDITIONS" sections[5] of the Policies:
4. Insured's Duties in the Event of Occurrence, Claim or Suit.
 (a) In the event of an occurrence, written notice
containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.
 (b) If claim is made or suit is brought against theCT Page 2799 insured, the insured shall immediately forward to the Company every demand, notice. summons or other process received by him or his representative.
 (c) The insured shall cooperate with the Company
and, upon the Company's request. assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment. assume any obligation or incur any expense other than for first aid to others at the time of accident.
 * * * * 6. Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full Compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.
 Any person or organization or the legal representative thereof who has secured such payment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any rights under this policy to join this Company as a party in any action against the insured to determine the insured's liability, no shall the Company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the Company of any its obligations hereunder.
 * * * *
Policy A-1, Form MP 00 90, p. 4; Policy A-2, Bates #I001218. (Emphasis added.) These provisions, like those discussed in O'Brien and Elan,
CT Page 2800 expressly required Interface to give Aetna notice, "as soon as practicable," of any occurrence that might give rise to a claim or suit against it. They also required Interface to notify Aetna of any claim or suit actually made or brought against it, by "immediately forwarding to [Aetna] every demand, notice, summons or other process received by him or his representative." The obvious purpose of these requirements was to enable Aetna to effectively exercise its right and duty to defend any suit for a covered claim. Armed with the knowledge timely notice would afford it, Aetna could: anticipate and respond in timely fashion to any pending or impending claim or suit it might be called upon to defend; investigate the facts underlying the claim or suit before memories faded and witnesses died or disappeared; settle any claim or suit, if advisable, before demands increased and litigation costs escalated; and otherwise prepare itself more efficiently for trial.
So important, in fact, were these notice requirements that the foregoing provisions made Interface's compliance with them a "condition precedent" to the enforcement of Aetna's contractual duties to it. The Policies thus established that here, as in O'Brien and Elan, the defendant insurer's duty to defend the insured, and its related obligation to pay the insured's defense costs, would not be triggered unless and until the insured gave it proper notice of the suit to be defended. Therefore, since Interface concluded its defense in theMilliken lawsuit long before it notified Aetna of that suit, Aetna never had a duty to defend it in that suit, and thus has no resulting duty to reimburse it for its costs of defense.
This conclusion is reinforced by other Policy provisions which expressly limit the expenses which Interface can incur for which Aetna must reimburse it. Looking first at subsection (c) of the above-quoted Policy provision entitled "Insured's Duties in the Event of Occurrence, Claim or Suit," one finds two related requirements which narrowly confine Interface's expected role in the preparation and presentation of its own defense. The first requires the insured to ". . . cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and . . . [to] assist in securing and giving evidence and obtaining the attendance of witnesses." Id. (Emphasis added.) The significance of this requirement is twofold: first, it obligates Interface to serve only as Aetna's assistant in preparing its defense; and second, it provides that Interface can only provide such assistance to Aetna if Aetna so requests. In short, this requirement clearly establishes that Interface had no independent right even to participate in its own defense, much less a right to hire its own counsel to conduct that defense without Aetna's approval.
The second important requirement imposed by subsection (c) is that CT Page 2801 "[t]he insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident." This requirement, like the first discussed above, expressly deprives Interface of any independent power to manage or control its own defense unless it is willing to pay all associated costs and expenses itself. By prohibiting Interface from incurring any expense other than for first aid "except at [its] own cost," this language necessarily precludes it from now seeking reimbursement for any other expense it chose to incur, on its own initiative, without a request from the insurer.
The latter point is powerfully underscored by a final relevant provision in the first two Policies. That provision, entitled "Supplementary Payments," provides as follows:
 1. Supplementary Payments. The company will pay, in addition to the applicable limit of liability:
 (a) all expenses incurred by the company all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limits of the company's liability thereon;
 (b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;
 (c) expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury
to which this policy applies;
 (d) reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit,
including actual loss of earnings not to exceed $25 CT Page 2802 per day.
Policy A-1, Form MP 00 90, p. 4; Policy A-2, Bates #I001216. (Emphasis added.) Several observations must be made about the significance of this provision.
First, Aetna's only general obligation to pay defense costs under this provision is expressly limited to "all expenses incurred by the company." (Emphasis added.) Plainly, no such general obligation is imposed with respect to costs incurred by others.
Second, this provision carefully limits the circumstances in which the insured can incur expenses for which Aetna must reimburse it. Subsection (c) provides that "[t]he company will pay expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies." That subsection, of course, affords Interface no basis for seeking reimbursement for legal expenses it incurred to hire counsel to defend it in the Milliken lawsuit, for there is no definition of "first aid for bodily injury" that reasonably includes the rendering of legal services to defend a copyright infringement action.[6]
Subsection (d), more importantly, provides that "the company will pay . . . reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit[.]" This provision, however, obviously lends no support to Interface's current claim for reimbursement for two reasons. First, Interface obviously did not incur the expenses here at issue "at [Aetna's] request." Such costs were therefore not incurred "in assisting the Company in the investigation or defense" of such a case. Second, since Aetna had no involvement in the defense of the Milliken lawsuit, Interface obviously did not incur such expenses "to assist" Aetna in the investigation or defense of that suit. For these reasons, Interface's pre-tender legal expenses are simply not covered by either of the first two Policies at issue in this case.
 Policies A-3, A-4 and A-5
The last three Policies under which Interface seeks reimbursement from Aetna for its pre-tender expenses in defending the Milliken lawsuit — Policies A-3, A-4 and A-S — are identical to each other in all material respects, and functionally identical to Policies A-1 and A-2 with respect to the issue before the Court. Policies A-3 and A-4 describe Aetna's duties to Interface with respect to covered claims for "advertising injury"[7] as follows: CT Page 2803
 COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY 1. Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B. We will have the right and duty to defend any "suit" seeking those damages. But:
 (1) The amount we will pay for damages is limited as described in SECTION III — LIMITS OF INSURANCE;
 (2) We may investigate and settle any claim or "suit" at our discretion; and
 (3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
 * * * * c. This insurance applies to "advertising injury" only if caused by an offense committed:
 (1) In the "coverage territory" during the policy period; and
 (2) In the course of advertising your goods, products or services.
Policy A-3, Bates #I001242; Policy A-4, Bates #I001150; (Emphasis added.) Policy A-5, in turn, describes Aetna's duties to Interface in the following terms:
 COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY 1. Insuring Agreement
CT Page 2804
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:
 (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
 (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverage A or B or medical expenses under Coverage C.
 No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B.
b. This insurance applies to:
 (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or televising done by or for you;
 (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;
 but only if the offense was committed in the "coverage territory" during the policy period.
Policy A-5, Bates #I001048-49. The foregoing provisions, like comparable provisions describing Aetna's duties to Interface in Policies A-1 and A-2, gave Aetna full responsibility to defend any claim or suit against Interface to recover damages for a covered advertising injury. They also gave Aetna the exclusive right to control the manner in which the defense would be managed and conducted, including "discretion" to investigate any occurrence and/or to settle any claim or suit the insurer might be CT Page 2805 required to defend. Id.
Furthermore, to preserve and protect Aetna's exclusive right to manage and conduct the defense of any suit for damages for a covered injury, these Policies, like Policies A-1 and A-2, imposed certain mandatory duties upon Interface. Those duties are set forth in a section of each Policy entitled "COMMERCIAL GENERAL LIABILITY CONDITIONS," which appears as follows in Policies A-3 and A-4:
2. Duties in The Event of Occurrence, Claim or Suit.
 a. You must see to it that we are notified promptly of an "occurrence" which may result in a claim.
Notice should include:
 (1) How, when and where the "occurrence" took place; and
 (2) The names and addresses of any injured persons and witnesses.
 a. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".
c. You and any other involved insured must:
 (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"
 (2) Authorize us to obtain records and other information;
 (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"
and
 (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
 d. No insureds will, except at their own cost, voluntarily make a payment. assume anyCT Page 2806 obligation, or incur any expense. other than for first aid, without our consent.
Policy A-3, Bates #I001245; Policy A-4, Bates #I001153. (Emphasis added.) Policy A-S imposes equivalent duties upon Interface in the following terms:
2. Duties in The Event of Injury, Claim or Suit.
 a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
 (1) How, when and where the "occurrence" or offense took place;
 (2) The names and addresses of any injured persons and witnesses; and
 (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
 b. If a claim is made or "suit" is brought against any insured, you must:
 (1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.
 You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
c. You and any other involved insured must:
 (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"
 (2) Authorize us to obtain records and other information;
 (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"
CT Page 2807 and
 (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damages to which this insurance may also apply.
 d. No insureds will, except at their own cost. voluntarily make a payment, assume any obligation, or incur any expense. other than for first aid, without our consent.
Policy A-5, Bates #I001053. (Emphasis added.) The foregoing provisions, like their counterparts in Policies A-1 and A-2 and in the policies discussed in O'Brien and Elan, expressly required Interface to give "prompt notice" to Aetna, or notice "as soon as practicable," of any occurrence, claim or suit, and to "immediately" forward to Aetna all relevant papers and documents pertaining to any such claim or suit that was actually made or brought. The enforcibility of Aetna' own duties under the Policies, moreover, was expressly conditioned upon Interface's full compliance with these mandatory duties.[8]
Therefore, under Policies A-3, A-4 and A-5, as under Policies A-1 and A-2, Aetna's contractual duty to defend Interface, and any related obligation it might ever have had to pay Interface's defense costs, could never have been triggered until Interface gave Aetna proper notice of the suit to be defended. Here, since all of Interface's costs were incurred before such notice was given, and thus before Aetna had any contractual duty to defend it, Interface is not entitled to reimbursement from Aetna for those costs.
This conclusion is reinforced by other provisions in Policies A-3, A-4 and A-S which limited the circumstances in which Interface could incur expenses for which Aetna was required to reimburse it. Looking first at subsection (d) of the above-quoted Policy provisions describing Interface's "Duties in The Event of Injury, Claim or Suit," one finds the same prohibition against incurring defense costs that appears in the comparable provisions of Policies A-1 and A-2. Under that subsection, each Policy unambiguously declares that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." This prohibition, like that contained in Policies A-1 and A-2, necessarily precludes Interface from seeking reimbursement for any non-first aid expense it chose to incur without Aetna's consent. CT Page 2808
Here as well, as in Policies A-1 and A-2, Interface's inability to seek reimbursement for legal expenses it chose to incur without Aetna's consent is clearly supported by the "Supplementary Payments" provisions of the Policies. As it appears in Policies A-3, A-4 and A-5, that provision provides as follows:
 SUPPLEMENTARY PAYMENTS — COVERAGES A AND B We will pay. with respect to any claim or "suit" we defend:
1. All expenses we incur.
 2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
 3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
 4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including any actual loss of earnings up to $100 a day because of time off from work.
5. All costs taxed against the insured in the "suit".
 6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.
 7. All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
These payments will not reduce the limits of insurance.
Policy A-3, Bates #I001243; Policy A-4, Bates #I001151; Policy A-5, Bates #I001050-51. The very same conclusions must be drawn from the foregoing CT Page 2809 provision as from its counterparts in Policies A-1 and A-2. First, Aetna's only general obligation to pay defense costs is expressly limited to expenses it incurs. No such general obligation is imposed with respect to costs incurred by others.
Second, this provision makes explicit what was left implicit in Policies A-1 and A-2 — that Aetna would only pay for such expenses as it incurred with respect to claims or suits it actually defended. Expenses incurred with respect to claims or suits defended by others fall outside the scope of coverage.
Subsection 4 of the provision, moreover, expressly limited as follows the circumstances in which Aetna would pay for expenses incurred by Interface in aid of its own defense: "We will pay, with respect to any claim or "suit" we defend: . . . 4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or `suit'[.]" So written, this subsection flatly excludes from coverage expenses incurred by Interface either in a suit not defended by Aetna or in a suit it defended, but without its request.
Here, to reiterate, Interface did not incur any of the expenses for which it now seeks reimbursement in a case which Aetna defended. Such expenses were therefore not incurred, as the Policies permitted, "to assist [Aetna] in the investigation or defense of the claim or `suit'."Id. Moreover, Interface did not incur such defense expenses "at [Aetna's] request." Id. Aetna knew nothing of the suit or of the need to defend it until after it was settled. In conclusion, Interface's pre-tender legal expenses are simply not covered by any of the last three Policies at issue in this case.
 CONCLUSION
The question presented for decision on the instant Motion is whether Aetna is entitled to judgment a a matter of law on its claim that none of the insurance policies here at issue affords Interface coverage for expenses it incurred in defending and setting a lawsuit of which it never gave notice to Aetna. For the reasons previously stated, the Court concludes that Aetna is indeed entitled to summary judgment because, under controlling Georgia case law, its duty to defend Interface in the underlying lawsuit was never triggered by notice and tender, and the language of the Policies does not otherwise require Aetna to pay for defense expenses incurred by Interface without Aetna's consent.
Accordingly, the Court hereby GRANTS Aetna's Amended Motion for Summary Judgment this 16th day of February, 2001. CT Page 2810
 ___________________, J. Michael R. Sheldon